IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STOEBNER HOLDINGS, INC., | ) | CIVIL NO. 06-00446 JMS/LEK |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANT'S MOTION IN |
| | ) | LIMINE NO. 1, (2) GRANTING |
| AUTOMOBILI LAMBORGHINI | ) | DEFENDANT'S MOTION IN |
| S.P.A.; JOHN DOES 1-10; JANE | ) | LIMINE NO. 4, AND (3) GRANTING |
| DOES 1-10; DOE CORPORATIONS | ) | IN PART DEFENDANT'S MOTION |
| 1-10; DOE PARTNERSHIPS 1-10; | ) | IN LIMINE NO. 6 |
| DOE JOINT VENTURES 1-10; AND | ) | |
| DOE LIMITED LIABILITY | ) | |
| COMPANY 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE NO. 1, (2) GRANTING DEFENDANT'S MOTION IN LIMINE NO. 4, AND (3) GRANTING IN PART DEFENDANT'S MOTION IN LIMINE NO. 6

## I. INTRODUCTION

Defendant Automobili Lamborghini S.P.A.'s ("Defendant") Motion

in Limine No. 1 asks the court to strike Plaintiff Stoebner Holdings, Inc.'s

("Plaintiff") expert, James M. Sattler ("Sattler") and preclude his testimony on

damages that Plaintiff allegedly incurred concerning a 2002 Lamborghini

Murcielago ("Murcielago"). Defendant's Motion in Limine No. 4 asks the court

to preclude Sattler from testifying about opinions disclosed after the discovery cut-off.  Defendant's Motion in Limine No. 6 asks the court to preclude untimely and speculative evidence in Plaintiff's supplemental discovery responses.  Based on the parties' briefings, the record before the court, and the arguments presented at the November 29, 2007 hearing, Defendant's Motion in Limine No. 1 is GRANTED in part and DENIED in part.  Mr. Sattler is qualified to testify that the Murcielago, without any of its problems and/or repairs, would be worth approximately $200,000 and the repair to the drivetrain and/or transmission depreciated its value by $5,000.  Sattler may provide no testimony, however, regarding the other problems with the vehicle that are not at issue in this action, and may not testify on any "loss of use" damages.

The court further GRANTS Defendant's Motion in Limine No. 4, precluding expert testimony disclosed by Plaintiff after the court-imposed discovery cutoff date, and GRANTS in part Defendant's Motion in Limine No. 6 to the extent it seeks to preclude Plaintiff from presenting late-disclosed testimony regarding loss of use damages.  At this time, the court does not determine the admissibility of (1) whether the drivetrain and/or transmission is fixed, or (2) the rental value of a Lamborghini.

## II.  **BACKGROUND**

Sattler is a licensed attorney in the state of Hawaii concentrating on "Real Estate matters, Corporation law, Commercial Litigation, and Fidelity and Surety law with an emphasis on business, commercial, and real estate litigation." Def.'s Ex. A.  Beyond his legal experience, Sattler has been an automobile enthusiast since the early 1950s, and since the early 1980s, has performed appraisals of older and specialty automobiles.  *Id.*

In his April 24, 2007 expert report to Plaintiff's counsel, Sattler explains that he inspected the Murcielago to (1) appraise the vehicle, and (2) assess and determine damages as a result of problems with the vehicle.  Def.'s Ex. D.  Sattler was informed that problems with the Murcielago included: (1) dash instruments not working, (2) noisy drivetrain and/or transmission, which had been replaced twice, (3) replaced differential, (4) variation in exterior paint color, and (5) black substance emitted from the vehicle's interior.  *Id.*  Based on this information and his inspection, Sattler found that in a 6-point condition grading system of 1 (excellent) to 6 (parts car), the Murcielago "would not qualify for any condition grade above 2" (fine).  *Id.*  Due to the vehicle's problems and compared to similar Murcielago vehicles on sale through the internet, Sattler concluded that the fair market value of the Murcielago was $150,000.00.  *Id.*  Sattler did not

explain how much each problem attributed to the Murcielago's depreciation, but

during his deposition testified that without these problems, the Murcielago would

be worth approximately $200,000.  Def.'s Ex. C at 118-19 (explaining that

$50,000 excessive depreciation is based on all of the problems of the Murcielago).

Moreover, if the only consideration was that the drivetrain and/or transmission

was repaired and was no longer noisy, the value of the Murcielago would

depreciate by $5,000.  *Id.* at 128-29.

Beyond the value of the Murcielago, Sattler also opined that its owner

could not use it for a significant period of time and experienced damages in the

form of loss of use or enjoyment.  During deposition, Sattler explained that loss of

use was an element of damages in this case because "when you buy a Lamborghini

at the -- the number of dollars that were paid for this one, whatever it was, the

reasonable expectation is that you can get in it and drive it and enjoy it, use it and

enjoy it whenever you want to."  Def.'s Ex. C at 135-36.  Sattler opined that loss

of use can be determined based on a formula including the original purchase price,

interest rate for time the Murcielago could not be used, and a depreciation factor:

> A reasonable estimate of the dollar value of the loss of use and
> enjoyment of the Subject Lamborghini can be determined based
> upon the original purchase price, a fair and reasonable interest
> rate for the period of time that the Subject Lamborghini could
> not be driven, used, or enjoyed, together with a depreciation

factor which was experienced during the time the Subject
Lamborghini could not be used or enjoyed.

Def.'s Ex. D.

Sattler explained that he devised this formula based on his practice of

law, reading damages treatises and case law, and from using this formula in

previous litigations.  Def.'s Ex. C at 141-42.  Sattler could not, however, provide

any potential error rate for his formula.  When asked "What is the likelihood of

this formula being wrong as far as determining loss of use or enjoyment of -- to

the vehicle?", Sattler responded:

> First place, judges are often wrong.  They're seldom in
> doubt, but they're often wrong.
> So, when you're talking about judges, you're talking
> about appellate judges or are you talking about trial court
> judges?  Number -- that's one aspect of my response.  Some
> judges misapprehend what lawyers are saying to them.  In other
> words, they just don't get it.  That's why most cases are settled
> rather than taken to their ultimate conclusions.
> I cannot tell you of a single instance where a judge in a
> case that I had either applied or refused to apply what I have
> said here.  I -- but your question -- your most recent question in
> -- about judges, it would depend upon a number of other
> factors, including credibility of witnesses, the precise testimony
> that was presented to the judge, the legal authorities that were
> cited; and even then he might get it wrong -- or she.

*Id.* at 145.

In setting forth this formula, Sattler gave no actual estimate of loss of use damages.  *See* Def.'s Ex. C at 138-39 (stating that he "was coming up with a manner or method to suggest to [Plaintiff's attorney] on how he might go about quantifying loss of use.").  Plaintiff would need to "come up with" the time out of use for the Murcielago.  *Id.* at 146; *see also id.* at 140 (noting that Mr. Stoebner may only want to use the car on weekends, and if the Murcielago was not available on those days, then loss of use damages would be attributed for those days only).  Further, the main reason Sattler could provide no "bottom-line number" was because he had not determined the depreciation factor.  *Id.* at 139.

Sattler explained that prior to the preparation of his expert report, he had not determined the depreciation factor for his loss of use formula because Plaintiff had not asked him to.  *Id.* at 102-03.  Nor had Sattler completed his necessary research by the time of his deposition, which was held on August 7 and 17, 2007.  *Id.*  Therefore, by the close of discovery, which was August 16, 2007,[1] Plaintiff had failed to provide any actual calculation of Plaintiff's alleged loss of use damages.

---

[1] During the hearing, the parties explained that they had agreed that Sattler's second day of deposition could occur one day after the close of discovery to accommodate scheduling conflicts.

In its August 28, 2007 Pretrial Conference Statement, Plaintiff calculated loss of use damages based on Sattler's formula, and indicated that Sattler may provide testimony regarding some of the inputs:

> Plaintiff's expert believes 7% interest per annum could have been earned during the relevant period.  This equals $20,020 per year.  The depreciation amounts to $21,208 per year.  Thus, the damages from loss of use during the three years of repair total $123,684.

Doc. No. 56.  In its September 5, 2007 Second Amended Response to Defendant's First Request for Answers to Interrogatories to Plaintiff, Plaintiff disclosed different inputs for Sattler's loss of use formula:

> Further, the loss of use would be based on the fact that car was in the shop for 1 year and has been out of use since February of 2005.  A reasonable interest rate, based on what the plaintiff pays on a mortgage is 6.11 percent.  The car cost about $286,000 or about $17,500 per year in interest at the rate of interest rate.  So for 3 and half years the loss of use based on the money used to buy the car is about $62,000.
> Also, according to the NADA special interest guide books, after the first two years, the book on the car in the top price category was $242,000 or $43,000 of depreciation for the first two years.  Since the car was in the shop a year that is $21,500[] loss.  For the next three years the book dropped an additional $74,500.

Def.'s Ex. A to Mot. in Limine No. 6.  During the hearing, Plaintiff confirmed that Sattler might testify on the depreciation factor for the loss of use formula, and that fact witnesses may provide testimony on Plaintiff's interest rate on its mortgage.

# III. <u>STANDARD OF REVIEW</u>

Pursuant to Fed. R. Evid. 702, an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  The court has the responsibility of acting as a gatekeeper to prevent unreliable expert testimony from reaching the jury.  *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 597 (1993) ("Daubert I").  In carrying out this responsibility, the court has discretion and flexibility in determining what evidence is relevant, reliable, and helpful to the trier of fact.  *Cabrera v. Cordis Corp*., 134 F.3d 1418, 1420 (9th Cir. 1998); *United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997) ("District Courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in Daubert.") (*quoting United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994).

The Ninth Circuit has articulated a two-prong analysis for admissibility.  First, the proffered testimony must be reliable, i.e., the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science."  *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ( "Daubert II") (citation and

8

quotation signals omitted).  Second, the testimony must meet the "fit" requirement,

i.e., "it logically advances a material aspect of the proposing party's case."  *Id.*

In determining reliability, the focus is on the expert's "principles and

methodology, not on the conclusions that they generate."  *Daubert I*, 509 U.S. at

594-95.  "Scientific evidence is deemed reliable if the principles and methodology

used by an expert are grounded in the methods of science."  *Clausen v. M/V New*

*Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003).  Accordingly, the expert's methods

must be adequately explained.  *United States v. Hermanek*, 289 F.3d 1076, 1094

(9th Cir. 2002); *see also Daubert II*, 43 F.3d at 1319 (holding that the expert must

"explain the methodology . . . followed to reach [his or her] conclusions"); *United*

*States v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994) (explaining that the methods

used by the expert must be described "in sufficient detail" such that the district

court can determine if they are reliable).  Depending on the facts of the case,

factors such as "methodology, testing, peer review and publication, error rates, and

'acceptability' in the relevant scientific community" may prove helpful in

determining the reliability of a particular scientific technique.  *See McDevitt v.*

*Guenther*, 2007 WL 2121241, at *16 (D. Haw. Jul. 20, 2007) (*citing Daubert I*,

509 U.S. at 593-95).

The second inquiry, the "fit" requirement, is directed "primarily to relevance." *Daubert I*, 509 U.S. at 591. "'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Id.* (*quoting* 3 Weinstein & Berger ¶ 702[02], p. 702-18). This inquiry is not merely a reiteration of the relevancy inquiry -- "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.* at 595 (citation and quotation signals omitted). "Federal judges must therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that [the evidence] speaks clearly and directed to an issue in dispute in the case, and that it will not mislead the jury." *Daubert II*, 43 F.3d at 1321 n.17.

## IV. <u>DISCUSSION</u>

### A.   Sattler's Appraisal of the Murcielago

Defendant asks the court to strike Sattler's opinions on the Murcielago's depreciation, because, among other things,[2] Sattler's calculation is

---

[2] The court need not address Defendant's other arguments that Plaintiff's excessive depreciation claim is inadmissible because (1) no excessive depreciation has been realized by Plaintiff, and (2) Plaintiff has carried the vehicle on its books as used car inventory for resale.

wholly subjective and unreliable.  Plaintiff responds that Sattler is qualified to testify as an appraiser, and such testimony is generally admissible.

Sattler has the requisite experience in the car industry and has adequately explained his methodology in determining the value of a 2002 Murcielago.  *See Rincon*, 28 F.3d at 924 (explaining that the methods used by the expert must be described "in sufficient detail" such that the district court can determine if they are reliable).  Sattler performed research on other Murcielagos offered for sale on the internet to determine that a vehicle with no repairs would be worth approximately $200,000.  Def.'s Ex. C at 114.  In short, Sattler is qualified to testify that a 2002 Murcielago with no repair history would be worth approximately $200,000.[3]

Defendant's arguments attacking Sattler's methodology go to the weight a jury may give this evidence, not its admissibility.  *See Obrey v. Johnson*, 400 F.3d 691, 695 (9th Cir. 2005) ("Thus, objections to a study's completeness generally go to 'the weight, not the admissibility of the statistical evidence,' *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1476 (9th Cir. 1995), and

---

[3]  The court's ruling is limited to Sattler's expertise to testify as to this issue.  The parties did not address, and the court at this time makes no determinations, as to the relevance or potential prejudice relating to this testimony.

should be addressed by rebuttal, not exclusion, [*Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977)].").

The court does agree with Defendants, however, that Sattler's opinion is inadmissible to the extent it addresses problems with the vehicle that are not at issue in this action.  Pursuant to the court's June 28, 2007 Order Granting in Part and Denying in Part Defendant's Motion For Summary Judgment, and the October 9, 2007 Stipulation for Dismissal with Prejudice of Claim Regarding Instrument Panel, the only remaining warranty claim concerns the drivetrain and/or transmission defects.  Sattler testified, however, that *all of the problems* with the Murcielago attributed to his determination that the vehicle's value depreciated by an excess of $50,000.   *See* Def.'s Ex. C at 118 (listing the Murcielago's problems that contributed to the Murcielago's $50,000 depreciation, and stating that "[i]t has been my opinion consistently that the problems of this car that have to be disclosed by any seller to any buyer have affected the value of this car by at least $50,000.  But for those problems, I would have appraised this car somewhere close to $200,000.").  Given the relevant issues of this case, Sattler's depreciation determination based on *all* of the Murcielago's problems does not "fit" the present issues in this case.  *See Daubert II*, 43 F.3d at 1321 n.17 (stating that the court must "exclude proffered scientific evidence under Rules 702 and 403 unless they

are convinced that [the evidence] speaks clearly and directed to an issue in dispute

in the case, and that it will not mislead the jury").  Indeed, allowing this testimony

would likely mislead the jury concerning what damages are actually at issue in this

action.  *Daubert II*, 43 F.3d at 1321 n.17 (noting that expert testimony must be

"directed to an issue in dispute in the case, and [] not mislead the jury").

Sattler nonetheless did provide some admissible testimony -- namely

the value of the Murcielago due to the drivetrain and/or transmission defects.  *See*

Def.'s Ex. C at 118, 128-29.  Accordingly, Sattler may testify that the fact that the

drivetrain and/or transmission was repaired and is no longer noisy would

depreciate the vehicle by at most $5,000.

## B.    Loss of Use/Enjoyment

Defendant argues that Sattler's opinions on loss of enjoyment[4] are

inadmissible because such damages are not allowed under the Magnuson-Moss

Warranty Act ("MMWA") and Hawaii state law, and Sattler failed to provide the

necessary foundation for any opinion on these damages.  Plaintiff responds that

loss of use damages are permitted, and other testimony will provide the relevant

information for the loss of use calculation.  The court finds that while loss of use

---

[4]  The warranty at issue expressly excludes consequential damages. During the hearing, the parties agreed that loss of use damages are only available if the jury first finds that the remedy provided by the warranty failed of its essential purposes. *See also Earl M. Jorgenson Co. v. Mark Const., Inc.*, 56 Haw. 466, 477, 540 P.2d 978, 986 (1975).

damages may be allowed for a breach of warranty claim, Sattler's testimony is

inadmissible because Plaintiff provides no basis for its loss of use formulation,

and Sattler's opinion is unreliable and untimely.

### 1. *Availability of Loss of Use Damages Under State and Federal Law*

Plaintiff may be entitled to loss of use damages under both its state

and federal breach of warranty claims.  Under Hawaii's Uniform Commercial

Code ("UCC"), damages for breach of warranty in "a proper case" may include

consequential damages, Hawaii Revised Statutes ("HRS") § 490:2-714.

Allowable consequential damages include:

> (a) Any loss resulting from general or particular requirements
> and needs of which the seller at the time of contracting had
> reason to know and which could not reasonably by prevented
> by cover or otherwise; and
> (b) injury to person or property proximately resulting from any
> breach of warranty.

HRS § 490:2-715.  "'Person' includes an individual or organization."  *Id.* § 490:1-

201(30).  HRS § 490:2-715's comments require "first that the buyer attempt to

minimize his damages in good faith, either by cover or otherwise."  *Id.* § 490:2-

715, Comments to Official Text.  Further, "[t]he burden of proving the extent of

loss incurred by way of consequential damage is on the buyer, but the section on

liberal administration of remedies rejects any doctrine of certainty which requires

almost mathematical precision in the proof of loss.  Loss may be determined in any manner which is reasonable under the circumstances." *Id.*

Hawaii courts have not yet determined whether HRS § 490:2-715 allows recovery of loss of use damages.  Other jurisdictions interpreting the same UCC provision, however, have allowed loss of use damages to compensate for actual damages incurred.  *See, e.g., Bishop v. Hyundai Motor Amer.*, 44 Cal. App. 4th 750, 755-56 (1996) (rejecting plaintiff's argument that loss of use damages should be allowed where no expense is incurred, and construing statute to apply "in the context of monetary losses *actually* incurred"); *Murray v. Holiday Rambler, Inc.*, 265 N.W.2d 513, 525-26 (Wis. 1978) ("[Loss-of-use damages] are properly available for periods during which a buyer, relying in good faith on the seller's assurances that defects will be cured, is unable to use the vehicle which he has purchased. . . .  [The buyer] must prove by credible evidence to a reasonable certainty that such damages were suffered and must prove, at least to a reasonable probability, the amount of these damages."); *Jerry Alderman Ford Sales, Inc. v. Bailey*, 291 N.E.2d 92, 106-07 (Ind. App. 1972) ("As we view the law as to loss of use, plaintiff here is restricted to her compensatory recovery against Alderman to the loss of profit sustained during the period Alderman withheld possession of the vehicle from her, together with any subsequent loss occasioned by the fact that the

truck would not perform according to the implied warranty of fitness for a particular purpose."); *Aries v. Palmer Johnson, Inc*., 735 P.2d 1373, 1382 (Ariz. App. 1987) ("Damages for loss of use are appropriate under the Uniform Commercial Code if the seller had knowledge of the buyer's intended use of the goods at the time of contracting and the buyer proves that there are periods when the goods would have been used but were not because of defects that the buyer, in good faith, was waiting for the seller to cure."); *Jeep Eagle Sales Corp. v. Mack Massey Motors, Inc.*, 814 S.W.2d 167, 176-77 (Tex. App. 1991) (lowering damages award where loss of use calculation included both replacement value and rental value for several days).

Based on the above, the court finds that the Hawaii Supreme Court would construe HRS § 490:2-715 to allow Plaintiff to recover damages for loss of use of the Murcielago.  In addition, the court rejects Defendant's argument that Plaintiff, as a corporation, is per se not entitled to loss of use damages.  While HRS § 490:2-715 refers to damages a "person" can recover, "person" is explicitly defined to include organizations.  *Id.* § 490:1-201(30).  Thus, that the Plaintiff is a corporation will not preclude compensatory damages for loss of use.  *See Barbarossa & Sons, Inc. v. Iten Chevrolet, Inc.*, 265 N.W.2d 655, 662 (Minn. 1978) (calculating loss of use damages of company based on rental value of

replacement truck for days such truck would be used); *Jerry Alderman Ford Sales, Inc.*, 291 N.E.2d at 104-05 (noting that "any measure of damages must be flexible enough to vary with the necessities of the situation" and finding that evidence of loss of profits was insufficient to sustain damages award).

Loss of use damages may also be available under the MMWA.  The MMWA does not specify available damages under the Act.  *See* 15 U.S.C. § 2310(d) ("[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title or under a written warranty, implied warranty, or service contract, may bring suit for damages and other equitable relief.").  Courts therefore look to state law to determine what remedies are available under the MMWA.  *See Kelly v. Fleetwood Enter.*, 377 F.3d 1034, 1039 (9th Cir. 2004) (looking to state law to determine whether punitive damages would be available under the MMWA).

As discussed above, the court finds that loss of use damages are available under the Hawaii UCC.  Accordingly, loss of use damages may be available for Plaintiff's MMWA claim as well.

The court further rejects Defendant's argument that loss of use damages should not be allowed under the MMWA in light of *Kelly*, 377 F.3d 1034.  In *Kelly*, plaintiffs sought to recover damages for loss of enjoyment of their

17

retirement stemming from defendant's inability to repair plaintiff's motor home. *Kelly*, 377 F.3d at 1036-37.  The Ninth Circuit found that plaintiffs' loss of enjoyment damages were a form of personal injury damages, which the MMWA specifically proscribes.  *Kelly*, 377 F.3d at 1039 (finding that these damages are "precisely the type of relief potentially available under state law but not under the [MMWA].  Indeed, it is difficult to imagine classifying 'loss of enjoyment' as anything other than injury to the person"); *see also* 15 U.S.C. § 2311(b)(2)(A) (stating that "[n]othing in this chapter (other than sections 2308 and 2304 (a)(2) and (4) of this title) shall . . . affect the liability of, or impose liability on, any person for personal injury").

       The damages sought in *Kelly* are distinguishable from the damages Plaintiff seeks here.  At the hearing, Plaintiff clarified that it seeks loss of use damages based on economic injury as opposed to loss of any personal enjoyment. This type of damages does not appear to be "personal injury" damages excluded under the MMWA.  Accordingly, economic loss of use damages may be available under the MMWA.

### 2.   *Plaintiff's Loss of Use Damages*

       Plaintiff argues that a proper calculation of its loss of use damages is based on its loss of use of the money it spent to purchase the Murcielago, which

would have otherwise been available to Plaintiff.  In support of this theory, Sattler posits a formula for loss of use "based upon the original purchase price, a fair and reasonable interest rate for the period of time that the Subject Lamborghini could not be driven, used, or enjoyed, together with a depreciation factor which was experienced during the time the Subject Lamborghini could not be used or enjoyed."  Def's Ex. D.  To fill in the numbers for this calculation, Plaintiff intends to use the interest rate on its mortgage, and for depreciation, the NADA special interest guide books.  *See* Pl.'s Second Amended Response to Def.'s First Request for Answers to Interrogatories No. 6 (attached as Ex. A to Def.'s Mot. in Limine No. 6).  The court finds that Sattler's testimony is inadmissible for several reasons, including that Plaintiff's formulation has no basis in fact or law, and that Sattler's testimony is unreliable.

First, as discussed above, loss of use damages should compensate a purchaser for actual pecuniary losses.  *See, e.g., Fly v. Allstar Ford Lincoln Mercury, Inc.*, 690 So. 2d 759, 763 (La. App. 1996) (noting that while Plaintiff was deprived car for eight days, "there is no evidence this loss of use caused him pecuniary damage"); *Bishop*, 44 Cal. App. 4th at 755-56 (rejecting plaintiff's argument that loss of use damages should be allowed where no expense is incurred, and construing statute to apply "in the context of monetary losses

19

*actually* incurred"); *Murray*, 265 N.W.2d at 526 (finding that the buyer "must prove by credible evidence to a reasonable certainty that such damages were suffered and must prove, at least to a reasonable probability, the amount of these damages").

        While Sattler stated that his loss of use formula is based on his experience practicing law and has been used in many previous disputes, Def.'s Ex. C at 141-42, Plaintiff has failed to come forth with any legal support for recovering for loss of use of money.  Further, Plaintiff could cite no case in which a court has used this loss of use formula, and the court could find no case discussing this formula, much less allowing loss of use damages based on a loss of use of money.  Indeed, Plaintiff's reliance on cases allowing recovery of finance charges do not support Plaintiff's formulation of damages, but rather emphasize that Plaintiff may recover only its proven expenses.  *See Laznovsky v. Hyundai Motor Am., Inc.*, 190 Misc. 2d 537, 542 (N.Y. Dist. Ct. 2002) ("Nor can there be any recovery for finance charges or interest since the vehicle was purchased for cash."); *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 487-88 (Ky. App. 1978) ("[D]efendants are not entitled to recover finance charges attributable to the period of time when they had the use of the truck or for any period following the destruction of the truck in the accident which was not the fault of Ford.").

20

The facts of this case do not support the proffered loss of use formula either.  Plaintiff does not argue that it *would* have used the money spent on the Murcielago to pay a portion of its mortgage; rather, at the hearing, Plaintiff asserted that this formula is reasonable because Plaintiff *could* have done so.[5] Plaintiff's hypothetical use of this money, without more, is speculative and fails to provide a necessary link between actual damages and the damages sought.[6] Plaintiff has therefore failed to meet its burden that the proposed formula captures Plaintiff's actual pecuniary losses.

Second, the court finds Sattler's testimony on loss of use unreliable and inadmissible pursuant to Fed. R. Evid. 702.  Sattler provided no foundation or explanation of why his formula is reliable in determining damages in this action -- i.e., how this formula properly relates to *Plaintiff's* damages.  Sattler does not explain why Plaintiff's damages are co-extensive with the interest rate on the

---

[5]  The speculative nature of Plaintiff's loss of use damages is further evidenced by the fact that since the close of discovery, Plaintiff has offered two different damages calculations based on two different interest rates.  *Compare* Pl.'s Aug. 28, 2007 Pretrial Conference Statement (positing interest rate of 7%), *with* Pl.'s Sep. 5, 2007 Second Amended Response to Def.'s First Request for Answers to Interrogatories (proposing interest rate based on mortgage of 6.11%).

[6]  Nor does Plaintiff even attempt to explain how Defendant would have reason to know that Plaintiff would pay its mortgage with this purchase price.  *See* HRS § 490:2-715 (defining consequential damages as "(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty").

purchase price of the Murcielago, and did not even know who owned the

Murcielago.  Moreover, Plaintiff has provided no evidence that this formula: (1) is

used and accepted by other damages experts in determining loss of use; (2) is peer-

reviewed; or (3) is likely to capture actual damages in this case, i.e., that it has a

low error rate.  *See Daubert I*, 509 U.S. at 593-95 (discussing potential factors to

weigh in determining reliability of scientific evidence); *see also* Def.'s Ex. C

(providing non-responsive answer to question of "What is the likelihood of this

formula being wrong as far as determining loss of use or enjoyment of -- to the

vehicle?").

Instead, Sattler states that his loss of use formula is based on his

experience practicing law, and has been used in many previous disputes.  Def.'s

Ex. C at 141-42.  This assurance by Sattler is insufficient to carry Plaintiff's

burden of proving that Sattler's testimony is reliable -- "'[n]othing in either

*Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the *ipse dixit* of the expert.'"

*Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (*quoting*

*General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

///

///

### 3.     *Plaintiff's Late-Disclosed Damages Information*

Further, and independent of the court's finding in section IV(B)(2), *supra*, the late-disclosed discovery regarding loss of use damages is stricken.  By the close of discovery, Plaintiff had provided no calculations for any of the "inputs" of its loss of use formula.  That is, by Sattler's August 17, 2007 deposition, Plaintiff had not provided, through Sattler or otherwise, the formula's interest rate or depreciation factor.  During the hearing, however, Plaintiff confirmed that Stoebner, Sattler, or another individual will testify regarding 6.11% interest rate and the depreciation factor for the loss of use formula.  This information was not disclosed until September 5, 2007 (Pl.'s Second Amended Response to Defendant's First Request for Answers to Interrogatories), well past the August 16, 2007 discovery cut-off date.

Plaintiff disputes neither that the interest rate and depreciation factor were disclosed after the discovery cut-off date, nor that the information was available to it prior to the discovery cut-off date.  Instead, Plaintiff simply argues that Defendant likewise provided some late discovery (which, as Plaintiff admits, was helpful to Plaintiff's case).

Under Federal Rule of Civil Procedure 16(b), a scheduling order "shall not be modified except upon a showing of good cause and by leave of the

district judge or, when authorized by local rule, by a magistrate judge." A court

has discretion in sanctioning a party for failure to comply with a scheduling order.

Fed. R. Civ. P. 16(f) ("If a party or party's attorney fails to obey a scheduling or

pretrial order . . . the judge, upon motion or the judge's own initiative, may make

such orders with regard thereto as are just, and among others any of the orders

provided in Rule 37(b)(2)(B), (C), (D).").

      Federal Rule of Civil Procedure 37(c)(1) further provides that striking

late-disclosed evidence is appropriate where the party has no substantial

justification for its untimely disclosure and the other party may be harmed:

> A party that without substantial justification fails to disclose
> information required by Rule 26(a) or 26(e)(1), or to amend a
> prior response to discovery as required by Rule 26(e)(2), is not,
> unless such failure is harmless, permitted to use as evidence at
> a trial, at a hearing, or on a motion any witness or information
> not so disclosed.

*See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th

Cir. 2001) (Rule "37(c)(1) gives teeth to these requirements by forbidding the use

at trial of any information required to be disclosed by Rule 26(a) that is not

properly disclosed.").

      The court finds that Plaintiff's untimely disclosure of additional

information necessary to calculate loss of use damages lacks justification, and that

allowing the use of the late-disclosed information would be prejudicial to

Defendant.  At the hearing, Plaintiff provided no justification for its late

disclosure.  Further, allowing this late disclosure would greatly prejudice

Defendant on the eve of trial.  Plaintiff's late confirmation of these specific inputs

affords Defendant no opportunity to process this information, retain its own

expert, and potentially present rebuttal expert testimony prior to trial.  Thus, the

court will not allow this late-disclosed testimony.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion In Limine No. 1 to

Strike Plaintiff's Expert and Preclude His Testimony on Damages is GRANTED

in part and DENIED in part, and Defendant's Motion in Limine No. 4 is

GRANTED.  Mr. Sattler may testify that the Murcielago, without any of its

problems and/or repairs, would be worth approximately $200,000 (subject to any

Fed. R. Evid 402 or 403 objection); and that the repair to the drivetrain and/or

transmission depreciated the value of the vehicle by $5,000.  Sattler may provide

no testimony regarding the other problems with the vehicle that are not at issue in

this action, and may not testify on loss of use.  The court further GRANTS

Defendant's Motion in Limine No. 6 to the extent it seeks to preclude Plaintiff

from presenting late-disclosed testimony regarding loss of use damages.  At this

time, the court does not determine the admissibility of (1) whether the drivetrain and/or transmission is fixed, or (2) the rental value of a Lamborghini.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 30, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A. et al.*, Civ. No. 06-00446 JMS/LEK, Order (1) Granting in Part and Denying in Part Defendant's  Motion in Limine No. 1, (2) Granting Defendant's Motion in Limine No. 4, and (3) Granting in Part Defendant's Motion in Limine No. 6